**23-1013**

# United States Court of Appeals
### *for the*
# Fourth Circuit

LIBERTY MUTUAL INSURANCE COMPANY,

*Plaintiff-Appellee,*

– v. –

ATAIN SPECIALTY INSURANCE COMPANY, formerly doing
business as USF Insurance Company,

*Defendant-Appellant,*

and

MCCLURE MANAGEMENT, LLC; CINDY KAY ADAMS,

*Defendants,*

– v. –

SIMKISS AGENCY, INC., d/b/a Simkiss & Block; SIMKISS &
BLOCK; DANIEL P. DUNIGAN,

*Third Party Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA AT WHEELING

## BRIEF OF APPELLEE
## LIBERTY MUTUAL INSURANCE COMPANY

MELISSA JANE LEE
MANIER & HEROD, P.C.
1201 Demonbreun Street, Suite 900
Nashville, Tennessee 37203
Telephone: 615-742-9372
E-mail: mlee@manierherod.com
*Counsel for Plaintiff-Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-1013__     Caption: __Liberty Mutual Ins. Co. v. Atain Specialty Ins. Co.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Atain Specialty Insurance Company__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?     ☐ YES ☑ NO

2.     Does party/amicus have any parent corporations?     ☑ YES ☐ NO
       If yes, identify all parent corporations, including all generations of parent corporations:

       AJK Holdings, LLC is the parent company of Atain Specialty Insurance Company.

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?     ☐ YES ☑ NO
       If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?   ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?   ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Brian S. Kane _____      Date: _____1.19.2023_____

Counsel for: Atain Specialty Insurance Company ___

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iv

COUNTERSTATEMENT OF THE ISSUES ..........................................1

STATEMENT OF THE CASE.................................................................1

  A.  Introduction. ...................................................................................1

  B.  Atain executed the Indemnity Agreement as a condition of Liberty's issuance of bonds at the request of Atain. .............................................................3

  C.  Atain procured the Bond from Liberty conditioned on its continuing obligations to Liberty under the Indemnity Agreement...........................................5

  D.  Atain obtained summary judgment in its coverage action against the Principals and attempted to use this ruling to "cancel" the Bond. ........................6

  E.  The Circuit Court ordered Liberty to pay the penal sum of the Bond, and Atain refused to honor its obligations to Liberty under the Indemnity Agreement.................................................................................10

SUMMARY OF THE ARGUMENT ....................................................12

STATEMENT OF STANDARD OF REVIEW ......................................13

ARGUMENT ......................................................................................14

  A.  The district court did not err when it ruled that, in order for estoppel to apply, Liberty would have had to make its alleged misrepresentations to Atain—the party invoking estoppel..........................................................14

    1.  The district court correctly held that Atain could not establish an equitable estoppel defense because Atain failed to demonstrate that Liberty made any representations to Atain. ..................................................................15

    2.  Atain waived the argument that it had constructive knowledge of representations made to Mr. Dunigan by not raising it at the summary judgment stage. ..................................................................................18

    3.  Atain's constructive knowledge argument, even if not waived, could not sustain its equitable estoppel defense. ...........................................19

      i.  Atain's constructive knowledge argument fails because the cited case law regarding Mr. Dunigan's status relative to Atain is not applicable. ...............19

i

ii.  Atain's constructive knowledge argument fails because mere constructive knowledge cannot support reasonable reliance. ............................................ 22

B.  The district court did not fail to consider the factual record in the light most favorable to Atain in determining that Liberty's alleged misrepresentations to Atain's purported insurance agent could not support estoppel as a matter of law. .......................................................................................................................... 23

1.  By its own admission, Atain's estoppel defense is based exclusively on Atain's correspondence with Mr. Dunigan, and the district court did not err in focusing on this correspondence ..................................................................... 25

2.  Atain's equitable estoppel defense fails because it cannot meet threshold conditions to sustain this defense as a matter of law. ....................................... 27

i.  Atain has not shown that exceptional circumstances existed or that it suffered unconscionable injury as necessary for equitable estoppel to apply .................................................................................................................. 27

ii.  Atain's equitable estoppel claim must fail because neither the Bond nor the Indemnity Agreement could be terminated. ............................................. 28

iii.  Liberty's email to Mr. Dunigan cannot estop Liberty from enforcing its contractual rights under the Indemnity Agreement because the email did not relate to those rights, but rather the internal status of the Bond .................... 29

3.  Atain's equitable estoppel defense fails because Atain cannot, as a matter of law, establish that Liberty made any misrepresentation. .............................. 31

4.  Atain's equitable estoppel defense fails because Atain cannot, as a matter of law, establish that it reasonably relied upon Liberty's email to Mr. Dunigan. ...................................................................................................... 32

i.  Atain's alleged reliance was not reasonable because its purported understanding that its liability in relation to the Bond had been terminated conflicted with the express terms of the applicable contracts. ....................... 32

ii.  Atain's alleged reliance was not reasonable because Atain had the material facts and ability to determine from them that the information it provided was not sufficient to terminate its liability in relation to the  Bond. 35

5.  Atain's equitable estoppel defense fails because it cannot establish reliance or prejudice as a matter of law. .......................................................................... 38

     i.   Atain cannot show that it relied upon or was prejudiced from having to perform an existing legal obligation.............................................................38

     ii.   Atain cannot show that it relied or was prejudiced because it did not change its position and had no right to do so. .................................................41

    6.   Contrary to Atain's characterization, New York law clearly allows courts to grant summary judgment on equitable estoppel claims or defenses when, as here, the party invoking estoppel has presented insufficient evidence to sustain such claim or defense..........................................................................43

C.   The district court did not err in dismissing Atain's alternative argument of estoppel by silence because the record does not present any genuine issues of material fact as to this argument. .........................................................44

    1.   Atain cannot demonstrate that Liberty had superior knowledge giving rise to duty to disclose as necessary to prove its estoppel by silence argument. .....46

    2.   The district court did not improperly resolve a disputed issue of material fact by determining that Liberty did not have "superior knowledge" giving rise to a duty to speak. ...............................................................................48

    3.   Atain's estoppel by silence argument fails because Atain did not rely upon Liberty's purported silence. ................................................................49

    4.   Atain's estoppel by silence argument also fails because Atain cannot establish all of the necessary elements. ............................................................50

CONCLUSION ....................................................................51

# TABLE OF AUTHORITIES

## Cases

*Adsani v. Miller,* 139 F.3d 67 (2d Cir. 1998) .............................................36

*Advanced Neurological Care, P.C. v. State Farm Mut. Auto. Ins. Co.*, 956 N.Y.S.2d 416 (N.Y. Dist. Ct. 2012) ....................................................22

*Aegis Sec. Ins. Co. v. Kingsway Fin. Servs., Inc.*, No. 1:16-CV-1555, 2019 WL 13167366 (M.D. Pa. May 13, 2019) ......................................................33

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.,* 404 F.3d 566 (2d Cir. 2005) .........46

*Aetna Ins. Co. v. Buchanan*, 369 So. 2d 351 (Fla. Dist. Ct. App. 1979) ................33

*Alliance Indus., Inc. v. Longyear Holdings, Inc.*, 854 F. Supp. 2d 321 (W.D.N.Y. 2012) ...............................................................................48

*Am. Prescription Plan, Inc. v. Am. Postal Workers Union*, 565 N.Y.S.2d 830 (N.Y. App. Div. 1991) .................................................................40

*Banister v. Davis*, 140 S. Ct. 1698 (2020) ...............................................14

*Bank of Am., N.A. v. Ali*, 163 N.Y.S.3d 156 (N.Y. App. Div. 2022) ........................38

*Buttry v. Gen. Signal Corp.*, 68 F.3d 1488 (2d Cir. 1995) ......................................17

*Cayuga Indian Nation of N.Y. v. Pataki*, 188 F. Supp. 2d 223 (N.D.N.Y. 2002) .....36

*Center v. Hampton Affiliates, Inc.*, 488 N.E.2d 828 (N.Y. 1985) ...........................22

*Chaikovska v. Ernst & Young, LLP*, 913 N.Y.S.2d 449 (N.Y. App. Div. 2010).......22

*Coggins v. Cnty. of Nassau*, 615 F. Supp. 2d 11 (E.D.N.Y. 2009) ...........................28

*Colman v. Colman*, 743 P.2d 782 (Utah Ct. App. 1987)...........................................17

*Cruz v. Ajim*, 177 N.Y.S.3d 554 (N.Y. App. Div. 2022)...........................................43

*David v. Summit Cmty. Bank*, 536 F. Supp. 3d 68 (E.D. Va. 2021) ........................13

*Donnelly v. Bank of N.Y. Co., Inc.,* 801 F. Supp. 1247 (S.D.N.Y. 1992) ................37

*First Nat. Ins. Co. of Am. v. Joseph R. Wunderlich, Inc.*, 358 F. Supp. 2d 44 (N.D.N.Y. 2004), *aff'd*, 144 F. App'x 125 (2d Cir. 2005)....................................30

*Flores v. Ethicon, Inc.*, 563 F. App'x 266 (4th Cir. 2014) ................................ 14, 18

*Gaia House Mezz LLC v. State St. Bank & Tr. Co.*, 720 F.3d 84 (2d Cir. 2013) ... 37, 39, 45

*Gen. Auth. for Supply Commodities, Cairo, Egypt v. Ins. Co. of N. Am.*, 951 F. Supp. 1097 (S.D.N.Y. 1997) .........................................................37

*Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144 (2d Cir. 2004) ........................35

*Gorman v. Town of Huntington*, 907 N.E.2d 292 (N.Y. 2009) ......................... 16, 23

*Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415 (Tex. 1995) ...............................................................................21

*H.E. Simpson Lumber Co. v. Three Rivers Bank of Mont.*, 311 P.3d 795 (Mont. 2013) ...................................................................................................17

*Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51 (1984) .........23

*Hogan Willig, PLLC v. Kahn*, 44 N.Y.S.3d 321 (N.Y. App. Div. 2016) .................48

*Hutton Const. Co. v. Cnty. of Rockland*, No. 87 CIV. 4027 (LAP), 1993 WL 535012 (S.D.N.Y. Dec. 22, 1993), *aff'd*, 52 F.3d 1191 (2d Cir. 1995) .............................40

*Icebox-Scoops v. Finanz St. Honore, B.V.*, 676 F. Supp. 2d 100 (E.D.N.Y. 2009) ..39

*Jana L. v. West 129th Street Realty Corp.,* 802 N.Y.S.2d 132 (N.Y. App. Div. 2005) ..................................................................................................................46

*Koral v. Saunders*, 36 F.4th 400 (2d Cir. 2022) ........................................................32

*Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706 (2d Cir. 2001)...50

*Lancaster at Fresh Meadow, Inc. v. Suderov*, 162 N.Y.S.2d 162 (N.Y. Sup. Ct. 1957), *aff'd*, 174 N.Y.S.2d 882 (N.Y. App. Div. 1958).........................................41

*Lee v. T.F. DeMilo Corp.*, 815 N.Y.S.2d 700 (N.Y. App. Div. 2006).......................42

*Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247 (2d Cir. 2021) ........................................................................................ 47, 48

*Marenco v. Delight Const. Corp.*, 38 Misc. 3d 1212(A) (Sup. Ct. 2013)...............21

*Mason Tenders v. Abatement Int'l/Advatex Ass'n, Inc.*, 82 F. Supp. 2d 175 (S.D.N.Y. 2000) ....................................................................................................................43

*McLaughlin v. Berle,* 418 N.Y.S.2d 246 (N.Y. App. Div. 1979).............................28

*Mendez v. Reynolds*, 681 N.Y.S.2d 494 (N.Y. App. Div. 1998)..............................39

*Metzger v. Aetna Ins. Co.,* 125 N.E. 814 (N.Y. 1920)..............................................35

*Mindspirit, LLC v. Evalueserve Ltd.*, 470 F. Supp. 3d 366 (S.D.N.Y. 2020).... 15, 32

*Mtivity, Inc. v. Office Depot, Inc.*, 525 F. Supp. 3d 433 (E.D.N.Y. 2021) ..............27

*Naughright v. Weiss*, 826 F. Supp. 2d 676 (S.D.N.Y. 2011) ...................... 46, 47, 48

*Neumann v. AT & T Commc'ns, Inc.*, 376 F.3d 773 (8th Cir. 2004) .......................30

*P.T. Bank Cent. Asia v. ABN AMRO Bank N.V.*, 754 N.Y.S.2d 245 (N.Y. App. Div. 2003) ..................................................................................................................49

*Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71 (S.D.N.Y. 2015), *aff'd*, 659 F. App'x 40 (2d Cir. 2016).....................................................................................33

*Pearlman v. Reliance Ins. Co.*, 371 U.S. 132 (1962)...............................................20

*Randolph Equities, LLC v. Carbon Capital, Inc.*, 648 F. Supp. 2d 507 (S.D.N.Y. 2009) .......................................................................................... 28, 30

*Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295 (2d Cir. 1996).........................43

*Reeve v. Gen. Acc. Ins. Co. of N.Y.*, 658 N.Y.S.2d 143 (N.Y. App. Div. 1997)........43

*Reynolds v. Guarantee Reserve Life Ins. Co.*, 358 N.E.2d 940 (Ill. App. Ct. 1976)17

*SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 167 (S.D.N.Y. 2009) ...................................................................................38

*Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377 (E.D.N.Y. 2018) ..27

*Sports Tech. Applications, Inc. v. MLB Advanced Media, L.P.*, 132 N.Y.S.3d 759 (N.Y. App. Div. 2020) ...........................................................................48

*Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690 (4th Cir. 2021) .................27

*Tears v. Boston Sci. Corp.*, 344 F. Supp. 3d 500 (S.D.N.Y. 2018)..........................46

*Travelers Indem. Co. v. Buffalo Motor & Generator Corp.*, 397 N.Y.S.2d 257 (N.Y. App. Div. 1977)...................................................................................33

*United States v. Flores-Granados*, 783 F.3d 487 (4th Cir. 2015) ...........................27

*United States v. Foreman*, 369 F.3d 776 (4th Cir. 2004) ........................................18

*Upper Pottsgrove Township v. Int'l Fid. Ins. Co.*, 976 F. Supp. 2d 598 (E.D. Pa. 2013) ..................................................................................................20

*Waste Recovery Enterprises LLC v. Town of Unadilla*, 742 N.Y.S.2d 715 (N.Y. App. Div. 2002)............................................................................... 16, 23

*William Penn Life Ins. Co. of N.Y. v. Viscuso*, 663 F. Supp. 2d 353 (S.D.N.Y. 2009) .................................................................................... 28, 29, 41

*Wilson v. Dryvit Sys., Inc.*, 71 F. App'x 960 (4th Cir. 2003) ...................................18

## Other Authorities

Black's Law Dictionary (11th ed. 2019) ...................................................................22

Restatement (Third) of Agency § 5.03 (2006)..........................................................22

## Treatises

28 N.Y. Prac., Contract Law § 11:34 ......................................................................36

31 C.J.S. Estoppel and Waiver § 111 ......................................................................16

4A Bruner & O'Connor Construction Law § 12:9 ..................................................20

57 N.Y. Jur. 2d Estoppel, Etc. § 39 .........................................................................16

74 Am. Jur. 2d Suretyship § 1 .................................................................................21

74 Am. Jur. 2d Suretyship § 2 .................................................................................20

Marilyn Klinger et al., *The Surety's Indemnity Agreement: Law & Practice* (2d ed. 2008) ...............................................................................................37

## COUNTERSTATEMENT OF THE ISSUES

1.     Whether the Court erred when it ruled that, in order for estoppel to apply, Liberty's alleged misrepresentations had to be communicated to Atain—the party invoking estoppel.

**Suggested answer: No**

2.     Whether the Court erred when it ruled that Liberty's alleged misrepresentations to Atain's purported insurance agent could not support estoppel.

**Suggested answer: No**

3.     Whether the Court erred when it neglected to consider those portions of the factual record advanced by Atain, as the non-moving party, purportedly establishing reliance and detriment.

**Suggested answer: No**

## STATEMENT OF THE CASE

### A. INTRODUCTION

This matter pertains to Liberty Mutual Insurance Company's ("Liberty") rights and claims against Atain Specialty Insurance Company ("Atain"), formerly known as USF Insurance Company ("USF"), under a General Agreement of Indemnity, dated March 10, 2010 (the "Indemnity Agreement"), executed by USF as a predecessor in interest to Atain. [JA62]. Liberty seeks indemnification from Atain for sums that that it paid under and in relation to an appeal bond, numbered

1

019067182 (the "Bond"), that Liberty issued on behalf of McClure Management, LLC ("McClure") and Cindy Adams ("Ms. Adams") (collectively, the "Principals") and in reliance on the promises and conditions in the Indemnity Agreement. [JA62]. Atain, the general liability carrier for McClure, requested the Bond on behalf of its insured, McClure, in relation to the appeal of a judgment entered against the Principals and in favor of Eric Taylor and James Turner (collectively, the "Claimants") in the Circuit Court for Ohio County, West Virginia. [JA62].

The Principals lost their appeal and, on November 30, 2020, the Circuit Court for Ohio County, West Virginia entered an order mandating that Liberty pay the full Bond proceeds on behalf of the Claimants to their counsel. [JA62]. Atain breached and remains in breach of its obligations under the Indemnity Agreement by failing to exonerate, indemnify, and save harmless Liberty from and against all losses, costs, and damages, including fees and expenses, that it sustained and incurred by reason of having issued the Bond and in prosecuting its claims against Atain. [JA62]. Liberty filed suit against Atain in the U.S. District Court for the Northern District of West Virginia, and the district court entered an order granting summary judgment in favor of Liberty in relation to its claims against Atain under the Indemnity Agreement. Atain has appealed that order to this Court. [JA9-43, JA559-79].

## B. ATAIN EXECUTED THE INDEMNITY AGREEMENT AS A CONDITION OF LIBERTY'S ISSUANCE OF BONDS AT THE REQUEST OF ATAIN.

Atain, as successor in interest to USF, is in the business of issuing general liability insurance policies and some professional liability insurance policies. [JA63-64, JA83-84]. In 2010, Liberty issued an appeal bond on behalf of USF in relation to an Iowa lawsuit in which USF was a defendant. [JA89, JA217-220]. Liberty required that USF execute the Indemnity Agreement as a condition of issuing the Iowa lawsuit appeal bond on behalf of USF. [JA89]. USF changed its name to Atain Specialty Insurance Company effective August 25, 2011, and, in a letter to Liberty dated October 16, 2013, Atain confirmed its agreement to be bound by the promises and conditions in the Indemnity Agreement. [JA11, JA45]. Atain has never requested that Liberty terminate its liability under the Indemnity Agreement. [JA64, JA91]. Over the years, USF/Atain procured multiple appeal bonds from Liberty, all conditioned upon the promises made by Atain under the Indemnity Agreement. [JA217-221, JA92-94].

The Indemnity Agreement confirms that it is applicable to all "Bonds," defined to include:

> [A]ny bonds, undertakings, recognizances, reinsurances, instruments of guarantee or other Surety obligations…requested from and/or issued by the Surety before, on or after the date of this Agreement, for…any other entity or person in response to a request from [any of the Indemnitors.]

[JA92]. The Indemnity Agreement defines "Surety" to include Liberty and "Indemnitor" to include USF Insurance Company. [JA92]. By executing the Indemnity Agreement, USF expressly represented and warranted that it had a specific, material, and beneficial interest in the procurement or issuance of each Bond. [JA92]. Other relevant provisions of the Indemnity Agreement provide:

[Section 2] The Principals or Indemnitors shall pay to Surety, promptly upon demand, all premiums, costs and charges of Surety for any Bonds requested from and/or issued by Surety, in accordance with Surety's rate filings, its manual of rates, or as otherwise agreed upon, and where such premium, costs and charges are annual, continue to pay the same, **until the Principals or Indemnitors shall serve evidence satisfactory to Surety of its discharge or release from all liability under the Bonds**.

[Section 3] The Surety has no obligation to execute, renew, continue, extend, amend or replace any Bonds, including final bonds (regardless of whether the Surety has issued a bid or proposal bond), and may, at its sole discretion, decline to do so. **The Surety may cancel any Bonds unless the Bonds state otherwise, and the Principals and Indemnitors shall make no claim to the contrary**.

[Section 4] Assent by the Surety to changes in any Bonds and/or in the contracts or obligations covered by any Bonds or refusal so to assent shall not release or in any way affect the obligations of the undersigned to the Surety.

[Section 5] The Indemnitors shall exonerate, indemnify and save harmless the Surety from and against any and all losses, costs, and damages of whatsoever kind or nature . . . which the Surety may at any time sustain or incur by reason of the extension of surety credit to any Principal . . . .

4

[Section 6] The Surety [Liberty Mutual] shall have the right, at its option and sole discretion, to adjust, settle or compromise any claim, demand, suit or judgment upon any bonds."

[JA92] (emphasis added).

### C. ATAIN PROCURED THE BOND FROM LIBERTY CONDITIONED ON ITS CONTINUING OBLIGATIONS TO LIBERTY UNDER THE INDEMNITY AGREEMENT.

The Claimants filed a racial discrimination lawsuit against the Principals in the Circuit Court for Ohio County, West Virginia (the "Circuit Court Case"). [JA66]. Following a jury trial, the Circuit Court entered a judgment against the Principals and awarded each Claimant the sum of $475,000 (the "Judgment"). [JA66, JA116]. The Principals appealed the Judgment to the Supreme Court of Appeals of West Virginia. [JA66, JA111].

Atain issued a general liability policy on behalf of McClure and/or its affiliate. [JA166, JA187-88]. Following multiple demands from McClure, Atain finally agreed to defend the Principals *after* entry of the Judgment and at the time of their appeal of the Judgment. [JA66, JA111]. Atain, through Daniel Dunigan (an agent/broker at Simkiss & Block), requested that Liberty issue the Bond on behalf of the Principals in relation to their appeal of the Judgment. [JA66, JA117, JA119-20]. Liberty issued the Bond, dated February 19, 2019, in reliance on the promises made and conditions agreed to by Atain in the Indemnity Agreement. [JA97, JA89-90, JA123].

5

The Bond identifies McClure and Ms. Adams as "Principal(s)" and is subject to the penal limit of $1,000,000. [JA97]. The Bond provides:

> [I]f the Principal(s) shall satisfy any money judgment contained in the judgment in full, including, if allowed by law, costs, interest, and attorneys' fees, and damages for delay **in the event said appeal is dismissed or said judgment is affirmed**, then this obligation shall be null and void; otherwise to remain in full force and effect[.].

[JA97]. (emphasis added). By its very terms, the Bond remains in "**full force and effect**" until satisfaction of the money judgment in the event of dismissal of the appeal or affirmation of the judgment. [JA97] (emphasis added).

## D. ATAIN OBTAINED SUMMARY JUDGMENT IN ITS COVERAGE ACTION AGAINST THE PRINCIPALS AND ATTEMPTED TO USE THIS RULING TO "CANCEL" THE BOND.

On August 30, 2018, *prior* to procuring the Bond, Atain filed a declaratory judgment action in the U.S. District Court for the Northern District of West Virginia to determine its obligations to the Principals as their general liability insurance carrier. [JA167, JA186-87, JA97]. On April 25, 2019, *after* procuring the Bond, Atain filed a motion for summary judgment in its lawsuit against the Principals. [JA186]. The Principals did not respond to the motion for summary judgment, and, on June 24, 2019, the district court granted summary judgment in Atain's favor, ruling that the policy issued by Atain did not provide defense or indemnity coverage for the Principals relative to the Circuit Court Case. [JA167, JA197].

6

When Liberty sought an additional premium from Atain in relation to the Bond in December 2019, Atain's claims director Andrew Miller indicated to Mr. Dunigan, Atain's broker, that Atain would not need the Bond renewed because it had won its coverage action. [JA252, JA277-78]. Mr. Dunigan responded:

> Thanks for getting back to me. To close the bond with the surety, I need to provide documentation that the case has been won/closed and their bond exposure has been extinguished. Please send me what you have and I'll get things in motion to close the bond.

[JA252]. Mr. Miller replied:

> Attached is the Opinion which granted Atain's Motion for Summary Judgment and directed the clerk to enter judgment. A copy of the judgment is also attached.

[JA251].

The parties do not dispute that in response to Mr. Dunigan's request for supporting documentation, Mr. Miller furnished to Mr. Dunigan documents pertaining to the coverage action filed by Atain, *not* the Circuit Court Case. [JA171]. Specifically, Mr. Miller emailed (1) an order granting summary judgment in favor of Atain and against the Principals in the coverage action and (2) a judgment in the coverage action confirming the grant of summary judgment. [JA 510, JA251].

Liberty was not a party to or otherwise involved in the coverage action, and neither the order nor the judgment in that action mentions Liberty or the Bond. [JA510, JA186-197]. During his deposition, Mr. Miller admitted that he *could not*

7

*have* provided documentation that the Circuit Court Case had been won or closed because it was still pending at the time of the email. [JA415, 467]. Mr. Dunigan responded to Mr. Miller's email as follows:

> Thanks. We will work with the surety to close the bond. Should there be anything else we need from your end, we will be in touch.

[JA251]. Neither Mr. Miller nor anyone at Atain had any further communications with Mr. Dunigan until Liberty received a claim on the Bond.

In an email to Liberty dated December 18, 2019, Mr. Dunigan stated that "[p]er the attached court documents, the subject bond should be closed." [JA256]. In an email to Mr. Dunigan dated December 19, 2019, Liberty underwriting assistant Annmarie Breene stated "[t]his bond has been cancelled." [JA256]. Liberty's corporate designees testified that closing a bond in its system is a "file maintenance billing event." [JA417, JA485]. Closing a bond is an internal administrative action that has and had absolutely no effect on the legal status of the Bond. [JA417, JA487]. Liberty cannot *terminate* appeal bonds such as the Bond, since liability under the Bond is tied to satisfaction or vacatur of the underlying judgment. [JA417, JA487]. Nor did the internal closure in any way affect Atain's continuing obligations in relation to the Bond, which arise exclusively from the Indemnity Agreement. [JA74, JA394].

Atain *never* directly or indirectly received the December 19, 2019 email indicating that the Bond had been "cancelled." [JA535-37, JA231, JA287-88]. Atain

8

*never* directly or indirectly received any communication, from Mr. Dunigan or anyone at Liberty, that the Bond had been cancelled, closed, or terminated. [JA230-32, JA287-88]. Atain *never* spoke to or communicated with any representative of Liberty about the Bond. [JA416, JA474]. Atain *never* received any email or confirmation from Liberty that it had no further obligations under the Indemnity Agreement. [JA416, JA474].

In fact, Atain was specifically placed on notice that the Bond remained open in April 2020 by an email from counsel for McClure and Ms. Adams requesting that Atain reconsider its position on paying for defense counsel and stating "[t]here is an appeal bond in place written by Liberty Mutual Insurance Company." [JA417, JA488]. Yet upon receiving this email, Atain failed to make any inquiry into the status of the Bond from counsel for the Principals, Mr. Dunigan, or Liberty. [JA417-18, JA298, JA491].

Atain admitted that the order and judgment entered in its separate coverage judgment action against the Principals did not discharge Liberty's obligations under the Bond. [JA415, 467]. Atain admitted that it never secured any type of judgment, order, release, or other document discharging Liberty's obligations under the Bond. [JA476]. Jeffrey Ditmar, the corporate designee for Atain, testified as follows:

> **Question**: Now that we are in this lawsuit, are you aware of any remedial action that Atain could have taken to ensure that it would have no further obligation under the bond?

**Answer**: I don't know specifically what would have been necessary.

[JA416-17, JA481].

Despite the unambiguous language of the Bond that it remained in "**full force and effect**" until satisfaction of the money judgment in the event of dismissal of the appeal or affirmation of the judgment and despite receiving no communication confirming that the Bond had been closed or cancelled, Atain now argues that Ms. Breene's email to Mr. Dunigan somehow excuses its obligations under the Indemnity Agreement. Appellant's Br. 22, 38.

### E. THE CIRCUIT COURT ORDERED LIBERTY TO PAY THE PENAL SUM OF THE BOND, AND ATAIN REFUSED TO HONOR ITS OBLIGATIONS TO LIBERTY UNDER THE INDEMNITY AGREEMENT.

In October 2020, the Supreme Court of Appeals of West Virginia affirmed the Circuit Court's judgment in favor of the Claimants. [JA124-154]. In November 2020, the Circuit Court ordered Liberty to pay the full Bond proceeds on behalf of the Claimants to their counsel. [JA67, JA155-57]. In a letter dated November 30, 2020, Liberty demanded that Atain satisfy the judgment pursuant to its obligations under the Indemnity Agreement. [JA67, JA90, JA103-04]. Pursuant to and compelled by the Circuit Court's order, Liberty paid the full $1,000,000 for the benefit of the Claimants and in discharge of its obligations under the Bond. [JA67, JA90, JA106].

10

Despite its clear contractual obligation to indemnify Liberty, Atain refused to pay, prompting Liberty to file suit to enforce its rights under the Indemnity Agreement. [JA67-68, JA90, JA17-19]. In addition to paying the penal sum of the Bond—*i.e.*, $1,000,000—Liberty has incurred and continues to incur fees, expenses, and costs for which Atain is obligated to reimburse Liberty under the unambiguous terms of the Indemnity Agreement. [JA92]. As of the date that it submitted a response to Atain's motion for reconsideration, Liberty had incurred a total of $1,155,974.90 in losses, fees, expenses, and costs as a result of having issued the Bond and the failure of Atain to honor its obligations under the Indemnity Agreement. [JA58, JA90, JA540]. Those fees, expenses, and costs—for which Atain is responsible—have only continued to increase through this appeal.

Atain has argued that Liberty Mutual is equitably estopped from enforcing its rights under the Indemnity Agreement because of its internal administrative "closure" of the Bond. [JA177-79, JA485]. However, Atain did not learn of Liberty's internal closure until it conducted discovery in this lawsuit [JA231-33, JA258-59],[1] and admits that it was not aware of any steps it could have taken to close out its liability under the Bond. [JA172, JA297-98]. The district court found no merit in

---

[1] Atain appears to have first received the email stating that the Bond was "cancelled" in discovery responses from Simkiss & Block and Mr. Dunigan, as evidenced by the Bates numbering, *e.g.*, "SIMKISS000029", on the bottom right of the emails in the record, which matches the emails produced in those discovery responses.

11

Atain's equitable estoppel defense and granted Liberty summary judgment in the amount of $1,123,933.90. [JA512]. Atain filed a motion for reconsideration, which the district court denied, and then brought the present appeal. [JA558, JA559-60].

## SUMMARY OF THE ARGUMENT

This case is about whether a party to an indemnity agreement that did not terminate and could not have terminated its contractual indemnity obligation can nonetheless do so via estoppel based on statements made to a third party that were not communicated to the party invoking estoppel and did not pertain to the indemnity agreement to be enforced. This is a basic contract dispute, and the terms and conditions of the Indemnity Agreement are unambiguous and fully enforceable against Atain. Atain requested the Bond, and Liberty issued the Bond in reliance on the Indemnity Agreement. While Atain may not have owed any obligation to the Principals, as its insureds, that obligation or lack thereof has absolutely no bearing on Atain's obligations to Liberty under the Indemnity Agreement.

Atain's only defense to performance is that of equitable estoppel. This argument is an obvious red herring. Atain relies upon repeated leaps in both logic and jurisprudence in an effort to establish a defense under this restrictively applied doctrine, which the district court correctly held that it had failed to do. The district court properly held that Liberty could not be equitably estopped from enforcing the Indemnity Agreement because, *inter alia*, its alleged misrepresentations were not

12

communicated to Atain. On appeal, Atain has failed to present any authority supporting its novel argument to the contrary. The district court also rightly rejected Atain's last-minute argument, made for the first time in its surreply, that representations to Atain's purported insurance agent could establish estoppel.[2]

In light of its holding on that issue, the district court did not fail to consider those portions of the factual record that Atain asserts established reliance and detriment but correctly determined that they could not support estoppel as a matter of law. Moreover, the district court properly rejected Atain's alternative argument of estoppel by silence because Liberty did not have "superior knowledge" creating a duty to speak under New York law. Thus, this Court should affirm the district court's grant of summary judgment in Liberty's favor.

## STATEMENT OF STANDARD OF REVIEW

Liberty agrees with Atain's statement of the standard of review except as to the last paragraph. The Supreme Court case quoted by the U.S. District Court for the Eastern District of Virginia in *David v. Summit Cmty. Bank*, 536 F. Supp. 3d 68 (E.D. Va. 2021) held in relevant part:

> In keeping with that corrective function, "federal courts generally have [used] Rule 59(e) only" to "reconsider[ ] matters properly encompassed in a decision on the merits." In particular, courts will not address new arguments or evidence that the moving party could have raised before

---

[2] [JA492-93]. Raising new issues in a reply or surreply brief is disfavored and rarely permitted, further emphasizing the last-ditch nature of this argument. *See Ergon-W. Va., Inc. v. EPA*, 980 F.3d 403, 419 (4th Cir. 2020) ("We typically do not allow parties to raise new issues in a Reply Brief.").

the decision issued. The motion is therefore tightly tied to the underlying judgment. . . . [I]f an appeal follows, the ruling on the Rule 59(e) motion merges with the prior determination, so that the reviewing court takes up only one judgment. The court thus addresses any attack on the Rule 59(e) ruling as part of its review of the underlying decision.

*Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (citations omitted). The Supreme Court's decision in *Banister* confirms that courts will not, on a Rule 59 motion to reconsider, address new arguments or evidence not raised prior to such motion. Thus, any arguments Atain raised for the first time in its motion to reconsider are not part of the underlying summary judgment decision reviewed by this Court. *See Flores v. Ethicon, Inc.*, 563 F. App'x 266, 270 n. 8 (4th Cir. 2014) ("[A]rguments raised for the first time in Rule 59 motions are also generally considered waived.").

## ARGUMENT

### A. THE DISTRICT COURT DID NOT ERR WHEN IT RULED THAT, IN ORDER FOR ESTOPPEL TO APPLY, LIBERTY WOULD HAVE HAD TO MAKE ITS ALLEGED MISREPRESENTATIONS TO ATAIN—THE PARTY INVOKING ESTOPPEL.

In the district court and before this Court, Atain makes no effort to challenge the merits of Liberty's breach of contract claim, and understandably so, as the clear terms of the Indemnity Agreement hold Atain liable to Liberty for Liberty's losses, costs, and damages, including fees and expenses, that it has incurred in relation to the Bond and in enforcing the Indemnity Agreement. [JA92]. Instead, Atain resorts to an unsubstantiated equitable estoppel defense to avoid its clear contractual liability. [JA165-82, JA492-95, JA520-28]. The district court correctly granted

summary judgment on Atain's equitable estoppel defense, which is deficient in multiple respects, as discussed below.

> **1. The district court correctly held that Atain could not establish an equitable estoppel defense because Atain failed to demonstrate that Liberty made any representations to Atain.**

The district court correctly granted summary judgment in Liberty's favor on Atain's equitable estoppel defense "because plaintiff [Liberty] never misrepresented the status of the bond to defendant Atain." [JA511]. After the fact, Atain seeks to characterize the district court's ruling as adding an unsupported fourth element to the three elements of equitable estoppel under New York law. Appellant's Br. 33-35. The parties agree that for Atain to prevail on its equitable estoppel defense, it must establish three elements: "(1) a misrepresentation by the plaintiff, (2) reasonable reliance by the defendant, and (3) prejudice." *Mindspirit, LLC v. Evalueserve Ltd.*, 470 F. Supp. 3d 366, 382 (S.D.N.Y. 2020). The district court's requirement that Liberty's representation had to be communicated to Atain was not a distinct standard or unsupported requirement but implicit in the "reasonable reliance" element of equitable estoppel. Common sense suggests, and applicable case law confirms, that it is impossible to rely *at all*, let alone *reasonably*, upon information unknown at the time of the alleged reliance.

Under New York law, "a person may not claim to have relied on a representation when that person did not know of the representation at the time of the

alleged reliance." 57 N.Y. Jur. 2d Estoppel, Etc. § 39 (citing *Gorman v. Town of Huntington*, 907 N.E.2d 292, 295 (N.Y. 2009)). In *Gorman*, New York's highest court refused to estop a city that had previously given assurances to a non-party that it would repair the sidewalk defect that injured the plaintiff because the plaintiff did not learn of the correspondence regarding the defect until after the accident, which "demonstrat[ed] a lack of reliance." 907 N.E.2d at 295. Similarly, in *Waste Recovery Enterprises LLC v. Town of Unadilla*, 742 N.Y.S.2d 715 (N.Y. App. Div. 2002), a New York appeals court held that a town was not estopped from enforcing a law that barred operation of a landfill by a statement its representative made at a town board meeting about the lack of such restrictions. *Id.* at 717-18. The court found that there was no reliance upon such statement as necessary for an estoppel defense because the plaintiff landfill operator was not present at the meeting and had already begun construction on the landfill in question. *Id.* at 718. The principle that estoppel is impossible without knowledge of the words or conduct alleged to be relied upon is recognized by prominent secondary sources and has been widely applied by other jurisdictions.[3]

---

[3] *See* 31 C.J.S. Estoppel and Waiver § 111 ("There is no compliance with the rule requiring reliance on representations, express or implied, as an element of equitable estoppel where the person setting up the estoppel had no knowledge of the acts, conduct, or statements by which the representations were made."); *H.E. Simpson Lumber Co. v. Three Rivers Bank of Mont.*, 311 P.3d 795 (Mont. 2013) (holding that unsecured creditor could not invoke estoppel against secured creditor who represented to third party that debtor's business was viable when the unsecured creditor was not aware of such when it loaned funds to the debtor); *Colman v. Colman*, 743 P.2d 782, 790 (Utah Ct. App. 1987) ("[E]stoppel cannot be inferred from facts of which the party to be estopped

In light of these cases, the district court did not err in holding that "defendant Atain's estoppel argument must fail because plaintiff never misrepresented the status of the bond to defendant Atain." [JA509-11]. The district court's ruling does not necessarily mean, as Atain would have it, that the "alleged misrepresentations [had] to be made directly to the party seeking to invoke estoppel," Appellant's Br. 33, such that Liberty could never have been estopped because it communicated via intermediaries.[4] The ruling can be understood to rest on the district court's simple and undisputed finding that no alleged misrepresentation by Liberty had been communicated to Atain, and thus Atain did not know of such statements at the time of Atain's alleged reliance. [JA510-11]. Because Atain lacked actual contemporaneous knowledge of Liberty's representations it now alleges give rise to estoppel, it is impossible for Atain to establish its reliance upon them under New York law. *See Gorman*, 907 N.E.2d at 295; *Waste Recovery*, 742 N.Y.S.2d at 718. Therefore, Atain's equitable estoppel defense fails, as the district court rightly recognized.

---

had no knowledge."); *Reynolds v. Guarantee Reserve Life Ins. Co.*, 358 N.E.2d 940, 944 (Ill. App. Ct. 1976) ("No estoppel is operative where the person claiming the benefit of the estoppel had no knowledge of the acts done which are claimed to result in an estoppel since no reliance is possible in such a situation.").

[4] Such a ruling would, however, find some support in existing case law. The Second Circuit held in *Buttry v. General Signal Corp.*, 68 F.3d 1488 (2d Cir. 1995), that the plaintiff could not invoke equitable estoppel against his former union based on stipulations made to third parties but not the plaintiff and that he "learned of . . . only from others" because he "show[ed] neither a misrepresentation made to him by [the union], nor reasonable reliance." *Id.* at 1493.

### 2. Atain waived the argument that it had constructive knowledge of representations made to Mr. Dunigan by not raising it at the summary judgment stage.

For the first time in its memorandum supporting its motion for reconsideration, Atain raised the argument that knowledge of representations to a party's purported insurance agent are imputed to that party and thus, that Atain had knowledge of Liberty's alleged misrepresentations to Mr. Dunigan even if he never communicated them to Atain. [JA177-82, JA492-95, JA526-27]. Under well-established Fourth Circuit precedent, this argument is waived because Atain did not raise it until its Rule 59 motion to reconsider, and the district court declined to consider it. *See Flores*, 563 F. App'x at 270 n. 8 ("[A]rguments raised for the first time in Rule 59 motions are also generally considered waived."); *Wilson v. Dryvit Sys., Inc.*, 71 F. App'x 960, 962 (4th Cir. 2003) ("[I]ssues raised for the first time in a motion for reconsideration are not preserved for appellate review if the district court refuses to exercise its discretion to excuse the movant's untimeliness."). *United States v. Foreman*, 369 F.3d 776, 785 (4th Cir. 2004) (same). The district court declined to consider this issue in its order denying reconsideration. [JA558]. Thus, this Court should find that this argument has been waived and decline to consider it on appeal.

Atain's argument that it did not raise this issue until its motion for reconsideration because it had no occasion to until the district court (purportedly)

18

"added the unsupported fourth element" to the equitable estoppel standard, is unpersuasive. Appellant's Br. 34. For the reasons stated in Section A.1, the district court did not add an unsupported fourth element to the standard for equitable estoppel. The requirement that a representation by Liberty had to be received by Atain was implicit in the "reasonable reliance" element of equitable estoppel rather than a new, unsupported element. Thus, the district court's insistence that the representations at issue be communicated to Atain was not an error of law, as Atain characterizes it, and Atain's arguments on reconsideration were a properly rejected effort to "relitigate" the district court's decision on summary judgment. [JA558].

### 3. Atain's constructive knowledge argument, even if not waived, could not sustain its equitable estoppel defense.

Even if Atain did not waive its constructive knowledge argument, such an argument does not support Atain's equitable estoppel defense. Atain argues that Mr. Dunigan, as Atain's broker in relation to the Bond, was Atain's agent under New York law, that notice to an agent is typically imputed to the principal because agents have a duty to, and are presumed to, disclose information to their principals, and therefore, that Atain had notice of Liberty's alleged misrepresentations to Mr. Dunigan. Appellant's Br. 35-36. Atain's argument founders in multiple respects, as explained below.

### i. *Atain's constructive knowledge argument fails because the cited case law regarding Mr. Dunigan's status relative to Atain is not applicable.*

19

Mr. Dunigan was not Atain's "insurance agent" in this context because, *inter alia*, suretyship is distinct from insurance and the role of the agent/broker as an intermediary is distinctly different. *See* 4A Bruner & O'Connor Construction Law § 12:9 ("Suretyship is a form of credit enhancement and is not 'insurance.'") (citing *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 140 n. 19 (1962)); 74 Am. Jur. 2d Suretyship § 2 ("Suretyship is not generally considered to be insurance . . . there is a wide difference between the two kinds of contracts."). Mr. Dunigan assisted Atain in procuring the *Bond* from Liberty on behalf of *Atain's insureds*. In this scenario, Liberty was not Atain's insurer, nor was Atain an insured or beneficiary. Instead, Liberty acted as the surety for *the Principals* at the request of *their insurer* and Liberty's indemnitor, Atain.

An insurance contract is a two-party relationship between the insurer and the insured that, if coverage is implicated, provides insurance for the benefit *of the insured*. *Upper Pottsgrove Township v. Int'l Fid. Ins. Co.*, 976 F. Supp. 2d 598, 604 (E.D. Pa. 2013). Put simply, the insured makes a demand on the insurer for coverage under an insurance policy for the benefit of the insured. That relationship did not exist here.

In the context of suretyship, a surety issues a bond on behalf of a principal for the benefit of the obligee. *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 418 (Tex. 1995); 74 Am. Jur. 2d Suretyship § 1. Depending on the type

20

of bond issued, proper claimants may include *the obligee* or other *third parties*. The claimants make a demand on the surety for coverage under the bond. This is the relationship that existed here, except that Atain was *not* a principal, an obligee, or a claimant. Atain was exclusively the indemnitor that guaranteed that Liberty would be indemnified and reimbursed for the losses, costs, and damages, including fees and expenses, that it incurred as a result of issuing the Bond. The Claimants were the beneficiaries of the Bond.

Thus, Mr. Dunigan did not act and could not have acted as Atain's "insurance agent" in the context of Atain procuring the Bond from Liberty. While an insurance agent or broker may serve as an intermediary between the beneficiary of an insurance policy and the insurer, the agent or broker handling a surety bond does not serve as an intermediary between the beneficiary of the bond and the surety. Therefore, the single, unpublished case pursuant to which Atain seeks to characterize Mr. Dunigan as its agent is inapplicable. *See Marenco v. Delight Const. Corp.*, 38 Misc. 3d 1212(A) (Sup. Ct. 2013) (referenced in a table in the New York Supplement).[5]

---

[5] Additionally, under New York law, "[t]he general rule is that knowledge acquired by an agent acting within the scope of his agency is imputed to his principal and the latter is **bound by** such knowledge although the information is never actually communicated to it." *Center v. Hampton Affiliates, Inc.*, 488 N.E.2d 828, 829 (N.Y. 1985) (emphasis added); *Chaikovska v. Ernst & Young, LLP*, 913 N.Y.S.2d 449, 452 (N.Y. App. Div. 2010) (same). As the Restatement (Third) of Agency explains:

> Imputation creates incentives for a principal to choose agents carefully and to use care in delegating functions to them. Additionally, imputation encourages a principal to develop effective procedures for the transmission of material facts,

### ii.    *Atain's constructive knowledge argument fails because mere constructive knowledge cannot support reasonable reliance.*

Even if Mr. Dunigan's knowledge of Liberty's alleged misrepresentations (that he never communicated to Atain) could be imputed to Atain for Atain's benefit, it would amount to, at most, constructive knowledge. *See Advanced Neurological Care, P.C. v. State Farm Mut. Auto. Ins. Co.*, 956 N.Y.S.2d 416, 419 (N.Y. Dist. Ct. 2012) (observing that notice may in some circumstances be "imputed to the agent's principal"). Such constructive knowledge is by definition a legal fiction rather than an actual state of affairs. *See Constructive*, Black's Law Dictionary (11th ed. 2019) ("Legally imputed; existing by virtue of legal fiction though not existing in fact."). The cases cited by Atain that agents are presumed to disclose information to their principals leave a missing link in Atain's estoppel argument, namely, that reliance can be based on such constructive knowledge. Again, common sense and available legal authority show that it cannot.

For purposes of estoppel, "reliance" refers to a change of position induced by the opposing party's words or conduct. *See Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984) ("[T]he party claiming the estoppel must have relied on its adversary's conduct 'in such a manner as to change his

---

while discouraging practices that isolate the principal or coagents from facts known to an agent.

Restatement (Third) of Agency § 5.03 Cmt. b (2006). Atain presents no authority to support its novel contention that imputation can benefit, rather than bind, a principal.

22

position for the worse.") (citation omitted). "Knowledge" whose existence is a mere legal fiction cannot induce a party to do anything and thus cannot be relied upon.

Atain has not presented any applicable authority supporting its novel assertion that mere constructive knowledge of alleged misrepresentations can sustain an equitable estoppel defense. Permitting an estoppel defense based on mere constructive knowledge would be a significant and unwarranted leap under existing authority. New York courts have not permitted parties to sustain an estoppel defense when they lacked actual knowledge of the representations alleged to give rise to estoppel at the time they claimed to have relied on them. *See Gorman*, 907 N.E.2d at 295; *Waste Recovery*, 742 N.Y.S.2d at 718. The courts in these cases sensibly held that without actual knowledge of the representations supporting equitable estoppel, it was impossible to establish reasonable reliance—a necessary element of that defense. Because Atain lacked actual contemporaneous knowledge of Liberty's alleged misrepresentations, it could not have relied upon them as necessary to establish its equitable estoppel defense.[6] Thus, the district court did not err in rejecting Atain's equitable estoppel defense.

**B. THE DISTRICT COURT DID NOT FAIL TO CONSIDER THE FACTUAL RECORD IN THE LIGHT MOST FAVORABLE TO ATAIN IN DETERMINING THAT LIBERTY'S ALLEGED MISREPRESENTATIONS TO ATAIN'S PURPORTED INSURANCE AGENT COULD NOT SUPPORT ESTOPPEL AS A MATTER OF LAW.**

---

[6] Liberty's alleged intentions in communicating with Mr. Dunigan, which Atain makes much of, are irrelevant for purposes of determining whether Atain actually received or relied on such communications. Appellant's Br. 38, 40.

23

The district court correctly determined that Liberty's alleged misrepresentations would have to have been communicated to Atain in order for Liberty to be equitably estopped from asserting its rights under the Indemnity Agreement. Liberty's email to Mr. Dunigan regarding "cancellation" of the Bond, uncommunicated to Atain, could not establish estoppel as a matter of law, making summary judgment proper and consideration of the portions of the record presented by Atain unnecessary.[7] Atain admitted, in the sworn testimony of its corporate designee, that *Mr. Miller's* email exchange with Mr. Dunigan—not Mr. Dunigan's subsequent email exchange with Liberty—was the *sole* basis for its estoppel defense. [JA536-537]. That said, the portions of the record that Atain alleges the district court failed to consider in the light most favorable to Atain do not present any genuine issue of material fact precluding summary judgment for the reasons stated below. Additionally, Atain's authority suggesting that equitable estoppel involves questions of fact for trial is misleading and inapplicable to the present matter, when the district

---

[7] In the fact section of its Brief, Atain seems to suggest that Liberty was also equitably estopped from enforcing the Indemnity Agreement by not charging Atain a renewal premium on the Bond. Appellant's Br. 25-26. This argument should be ignored as not one of the three issues presented on appeal but is without merit regardless. First, as discussed in Section B.1., below, Atain has given sworn testimony that its estoppel defense is based exclusively on *Atain's correspondence with Mr. Dunigan*, not any action by Liberty. Second, the record shows that the payment or non-payment of premiums does not impact whether an appeal bond legally remains in effect. [JA348]. Finally, for the reasons set forth in the following portions of Section B, Atain has failed to establish any elements to support this defense.

24

court ruled that there was insufficient evidence as a matter of law for Atain to establish its equitable estoppel defense.

**1. By its own admission, Atain's estoppel defense is based exclusively on Atain's correspondence with Mr. Dunigan, and the district court did not err in focusing on this correspondence.**

On appeal, Atain objects to the district court's determination that "Atain's estoppel defense relating to the subject bond is premised entirely on an email exchange between its claims director, Andrew Miller, and Daniel Dunigan, the agent/broker at Simkiss & Block, in December 2019," [JA509], averring that this statement "represents a patent failure to consider both the entirety of the record and the record in the light most favorable to Atain." Appellant's Br. 38. Yet Atain's corporate representative Mr. Ditmar admitted in his deposition that Atain's estoppel defense is based exclusively on this email exchange between Mr. Miller and Mr. Dunigan, even though Atain knew by then of the email exchange between Mr. Dunigan and Liberty it now alleges gives rise to estoppel:

> [Question] Are there any other representations, misrepresentations, actions, and/or inactions [other than the email from Mr. Dunigan] that led Atain to believe that the bond had been closed in December 2019?
>
> [Answer] Not that I'm aware of at this time.

[JA536-537].[8] Based on this admission, the district court's ruling as to the grounds of Atain's estoppel defense was without error.

Atain has attempted to muddy the water on this issue with a series of irrelevant allegations—*e.g.*, that Liberty only communicated with Atain through Mr. Dunigan, that Liberty expected that Mr. Dunigan would transmit information he received from Liberty to Atain, and that Liberty's practice was not to "close" a bond until it was satisfied that its liability was discharged. Appellant's Br. 38-40. From these points, Atain seeks to convince this Court that its understanding that the Bond was closed was "predicated on" and "inextricably intertwined" with Liberty's email to Mr. Dunigan. *Id.* at 40. This artful language is not convincing and is belied by the undisputed facts. If Atain had any belief about the status of the Bond, it would have to have been derived from Mr. Dunigan's email exchange with Mr. Miller that pre-dated Liberty's email to Mr. Dunigan stating that the Bond had been "cancelled." [JA230-234, JA258, JA251-53]. As discussed at length above, it is impossible for Atain to have relied upon representations unknown to it when its alleged reliance occurred, and the district court therefore properly rejected Atain's equitable estoppel defense.

---

[8] At the time Atain's corporate representative Mr. Ditmar was deposed on June 1, 2022, Atain had already received the discovery responses from Simkiss & Block containing Mr. Dunigan's email exchange with Liberty in which Liberty stated that the Bond was "cancelled."

Even if this Court holds that the district court erred in deciding the threshold issue of whether Liberty's alleged misrepresentations could support an estoppel defense when Atain lacked actual knowledge of their existence, Atain would still fail to establish equitable estoppel for multiple reasons. This Court is "entitled to affirm on any ground appearing in the record, including theories not relied upon or rejected by the district court." *United States v. Flores-Granados*, 783 F.3d 487 (4th Cir. 2015) (citation omitted). *See also Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 712 (4th Cir. 2021) (same). The following arguments are revealed by the record and may be relied upon by this Court to affirm the district court's ruling.

**2. Atain's equitable estoppel defense fails because it cannot meet threshold conditions to sustain this defense as a matter of law.**

**i.    *Atain has not shown that exceptional circumstances existed or that it suffered unconscionable injury as necessary for equitable estoppel to apply.***

As an initial matter, equitable estoppel is an "extraordinary remedy" available in only exceptional circumstances in which the party invoking estoppel has suffered "unconscionable injury and loss." *Mtivity, Inc. v. Office Depot, Inc.*, 525 F. Supp. 3d 433, 441 (E.D.N.Y. 2021). *See also Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 395 (E.D.N.Y. 2018) ("[T]he doctrine of equitable estoppel is to be invoked sparingly and only under exceptional circumstances."). Atain has not established any of these prerequisites and cannot do so. Atain's only "injury" is

having to satisfy a contractual obligation in existence before any alleged estoppel occurred and that Atain had no ability to discharge absent the occurrence of certain events that had not occurred at the time it sought discharge, as discussed below. A party's obligation to indemnify a loss the risk of which it had agreed to bear is by no means an exceptional circumstance warranting application of this doctrine.

>  ii.   *Atain's equitable estoppel claim must fail because neither the Bond nor the Indemnity Agreement could be terminated.*

"New York courts have 'consistently held that the doctrine of equitable estoppel cannot be invoked to create a right where one does not otherwise exist.'" *Randolph Equities, LLC v. Carbon Capital, Inc.*, 648 F. Supp. 2d 507, 524 (S.D.N.Y. 2009) (quoting *Wilson v. Hevesi,* 1998 WL 351861, at *6 (S.D.N.Y. June 29, 1998)). *See also Coggins v. Cnty. of Nassau*, 615 F. Supp. 2d 11, 28 (E.D.N.Y. 2009) ("Because [the plaintiff] did not possess a right to representation by the County Attorney . . . he cannot look to the doctrine of estoppel to create one."); *McLaughlin v. Berle,* 418 N.Y.S.2d 246, 248 (N.Y. App. Div. 1979) ("[T]he doctrine should only be applied when failure to do so would operate to defeat a right legally and rightfully obtained. It cannot operate to create a right."). In *William Penn Life Insurance Co. of New York v. Viscuso*, 663 F. Supp. 2d 353 (S.D.N.Y. 2009), the U.S. District Court for the Southern District of New York held that equitable estoppel:

> "[I]s limited in its effects to measures necessary to place the parties in the same relative positions they would have enjoyed if the grounds for estoppel had not existed." *New York State Energy Research &*

*Development Authority v. Nuclear Fuel Services, Inc.,* 561 F. Supp. 954, 965 (W.D.N.Y. 1983). **Equity will not step in to give the Birns Defendants a benefit they could only have become entitled to if Birns did have the power to make the change**. Here, if the asserted "grounds for estoppel" . . . never existed, the Birns Defendants would not have been the actual beneficiaries under the policy. So there is no basis for the Birns Defendants to work an estoppel against William Penn.

*Id.* at 360 (emphasis added).

Under the express terms of the Bond, it could not be discharged unless Atain's insured had prevailed in the underlying suit or a judgment against its insured had been satisfied. [JA97]. Similarly, the Indemnity Agreement contained no provision by which Atain could terminate its liability thereunder. [JA92-94]. Neither document gave Atain the right to avoid liability. If Atain were to prevail on its equitable estoppel defense, it would impermissibly obtain a benefit it could only have been entitled to if it had such rights. Thus, Atain's equitable estoppel defense amounts to a ploy to create rights that do "not otherwise exist" and must be rejected.

### iii.    *Liberty's email to Mr. Dunigan cannot estop Liberty from enforcing its contractual rights under the Indemnity Agreement because the email did not relate to those rights, but rather the internal status of the Bond.*

Atain cannot establish equitable estoppel against Liberty because the representations upon which Atain purports to have relied have nothing to do with Liberty's right to enforce the terms of the Indemnity Agreement. In *Randolph Equities*, the defendant investment firm had terminated its funding commitment for

a real estate purchase after the plaintiff purchaser failed to meet preconditions in the financing agreement. 648 F. Supp. 2d at 513-14. The purchaser sought to estop the investment firm from enforcing the financing preconditions based on its representations about an asset manager involved in the sale that allegedly induced the purchaser to work exclusively with the investment firm to secure financing. *Id.* at 524. The U.S. District Court for the Southern District of New York rejected the purchaser's equitable estoppel claim, holding that:

> Plaintiffs clearly want their estoppel claim to relate to Carbon's termination of the contract, but that would only apply if the underlying false representations related to the alleged waiver of preconditions in the financing agreement.

*Id.* at 524-25. *See also Neumann v. AT & T Commc'ns, Inc.*, 376 F.3d 773, 784 (8th Cir. 2004) ("[T]he statements allegedly made by Peterson and CIGNA did not relate to the definition of accident or sickness benefits . . . and Neumann has therefore not created a genuine issue of fact as to whether AT & T and Gates McDonald are estopped from classifying her injury as one covered by sickness rather than accident benefits.").

As Liberty has repeatedly pointed out, Atain's liability to Liberty is derived exclusively from the Indemnity Agreement, not the Bond. [JA74, JA76, JA394]. *See First Nat. Ins. Co. of Am. v. Joseph R. Wunderlich, Inc.*, 358 F. Supp. 2d 44, 54 (N.D.N.Y. 2004), *aff'd*, 144 F. App'x 125 (2d Cir. 2005) (rejecting principal's attempt to avoid liability to surety under indemnity agreement under terms of surety bonds

because the surety's right to recover arose from the indemnity agreement, not the bonds). The email from Liberty to Mr. Dunigan that Atain relies upon to support its estoppel argument simply states that "[t]he bond has been cancelled." [JA258]. The email does not mention Atain or its liability under the Indemnity Agreement. The contents of the email cannot then, as a matter of law, estop Liberty from enforcing Atain's liability under the Indemnity Agreement. Thus, Atain's equitable estoppel claim must fail.

### 3. Atain's equitable estoppel defense fails because Atain cannot, as a matter of law, establish that Liberty made any misrepresentation.

An essential element of equitable estoppel is a misrepresentation by the party sought to be estopped. *Mindspirit*, 470 F. Supp. 3d at 383. Atain alleges that the statement in Liberty's email to Mr. Dunigan that the Bond had been "cancelled" was a misrepresentation. Appellant's Br. 38. However, this statement could not have been a misrepresentation because Liberty did, in fact, "cancel" or "close" the Bond in its system for billing event tracking purposes (based on the misleading documentation furnished by Mr. Miller). [JA174, JA382]. As previously explained, such internal closure had no effect on liability under the Bond. [JA417, JA487, JA378-79]. Atain, in effect, seeks to characterize Liberty's accurate statement as a misrepresentation simply because Atain incorrectly understood the meaning and/or legal effect of that statement. [JA491]. Atain's misunderstanding of Liberty's accurate statement cannot somehow convert it into the "actual misrepresentation" required under New York

31

law to establish equitable estoppel. *Koral v. Saunders*, 36 F.4th 400, 409 (2d Cir. 2022) ("The doctrine requires proof that the defendant made an actual misrepresentation[.]") (citation omitted). Atain's equitable estoppel defense fails as a matter of law because Atain cannot prove this essential element of its defense.

### 4. Atain's equitable estoppel defense fails because Atain cannot, as a matter of law, establish that it reasonably relied upon Liberty's email to Mr. Dunigan.

#### i. *Atain's alleged reliance was not reasonable because its purported understanding that its liability in relation to the Bond had been terminated conflicted with the express terms of the applicable contracts.*

As previously explained, Atain seeks to use equitable estoppel to create a right to terminate its liability under the Indemnity Agreement where none exists, an application of the doctrine that New York courts have firmly rejected. The fact that Atain had no right to terminate its liability under the Indemnity Agreement also prevents Atain from establishing that it "reasonably relied" on representations that it purportedly understood to allow for such termination.

The U.S. District Court for the Southern District of New York held in *Mindspirit* that "[c]ourts addressing claims of equitable estoppel have repeatedly held that it is unreasonable to rely on oral representations that contradict a written contract's express terms." 470 F. Supp. 3d at 383 (citing New York cases). Atain's liability to Liberty is derived exclusively from the Indemnity Agreement, not the Bond. [JA74, JA 394]. To the extent that Atain seeks to tie its liability to the status

of the Bond, this is contradicted by the clear and unambiguous terms of the Indemnity Agreement. [JA92]. "Under New York law, a party who signs a written contract is conclusively presumed to know its contents and to assent to them, and he is therefore bound by its terms and conditions." *Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 76 (S.D.N.Y. 2015), *aff'd,* 659 F. App'x 40 (2d Cir. 2016)).

Atain has expressly agreed to the Indemnity Agreement's terms, and those terms confirm that Liberty has and had no obligation to execute, renew, continue, extend, amend, or replace the Bond. [JA422, JA92]. These terms *must* be enforced. Atain has never requested that its liability under the Indemnity Agreement be terminated. Termination, even if properly effectuated, is not applicable to prior issued bonds or in the case of asserted liability. *See, e.g.*, *Aegis Sec. Ins. Co. v. Kingsway Fin. Servs., Inc.*, No. 1:16-CV-1555, 2019 WL 13167366, at *4 (M.D. Pa. May 13, 2019) holding that "an indemnitor **cannot** unilaterally terminate an indemnity agreement as long as the underlying risk protected by such indemnity remains") (citing *Travelers Indem. Co. v. Buffalo Motor & Generator Corp.*, 397 N.Y.S.2d 257, 258 (N.Y. App. Div. 1977) (emphasis in original); *Aetna Ins. Co. v. Buchanan*, 369 So. 2d 351, 354 (Fla. Dist. Ct. App. 1979) (allowing indemnitor to "unilaterally cancel any further indemnity obligation on his part while the bond remains in effect would contradict the clear provisions of the indemnity agreement

and undermine the protection for which the surety bargained"). This principle prevents indemnitors from using "termination" to improperly escape liability.

Further, Section 3 of the Indemnity Agreement confirms that Liberty *may* cancel any Bond *unless* the Bond states otherwise. [JA92]. The Bond provides:

> [I]f the Principal(s) shall satisfy any money judgment contained in the judgment in full, including, if allowed by law, costs, interest, and attorneys' fees, and damages for delay **in the event said appeal is dismissed or said judgment is affirmed**, then this obligation shall be null and void; otherwise to remain in full force and effect[.]

[JA97] (emphasis added). By the Bond's express terms, which Atain is charged with reading and understanding as the party that procured its issuance, the Bond remains in "**full force and effect**" until satisfaction of the money judgment in the event of dismissal of the appeal or affirmation of the judgment. [JA97].

Liberty's claims against Atain and the relationship between Liberty and Atain are governed *exclusively* by the *Indemnity Agreement*. [JA74, JA 394]. There can be no dispute as to the validity and enforceability of the Indemnity Agreement. The provisions of the Indemnity Agreement are unquestionably clear that Liberty owed no duty or obligation to Atain to (1) "close" or not "close" the Bond, (2) invoice Atain or not invoice Atain in relation to premiums due on the Bond, (3) confirm that Atain, in seeking to "close" the Bond, had actually provided the documents represented—*i.e.*, documents showing a discharge of Liberty's liability in relation to the Bond, (4) notify Atain that it had an obligation or exposure under the Indemnity

34

Agreement in relation to the Bond, (5) obtain a release or discharge of the Bond, or (6) notify Atain of any "steps" needed to seek a discharge of the Bond. [JA92-94].

Atain's position that Liberty's alleged misrepresentation about the status of the Bond waived Atain's liability under the Indemnity Agreement contradicts the terms of the Indemnity Agreement. [JA177-80]. Atain is charged with reading and understanding the terms of the contracts into which it enters. *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) ("[A] party 'who signs or accepts a written contract ... is conclusively presumed to know its contents and to assent to them.'") (quoting *Metzger v. Aetna Ins. Co.,* 125 N.E. 814 (N.Y. 1920)). Thus, the undisputed facts demonstrate that Atain could not have reasonably relied on any misrepresentation.

> ii.    ***Atain's alleged reliance was not reasonable because Atain had the material facts and ability to determine from them that the information it provided was not sufficient to terminate its liability in relation to the Bond.***

Atain cannot establish reasonable reliance on the email exchange with Dunigan based on the undisputed facts. Atain was a sophisticated insurance company and Mr. Miller, the individual who participated in the December 2019 email exchange with Mr. Dunigan on behalf of Atain, was a licensed attorney with experience as a judicial clerk and insurance defense and coverage counsel. [JA413, JA429, JA414, 442]. Mr. Dunigan's email to Mr. Miller clearly indicated that Liberty needed evidence that the Circuit Court Case "ha[d] been won/closed" and that

35

Liberty's "bond exposure ha[d] been extinguished." [JA252]. Mr. Miller has acknowledged in sworn testimony that he did not actually provide such documentation to Mr. Dunigan because, at that time, the Circuit Court Case had not been won/closed and Liberty's obligations had not been extinguished. [JA416, JA476, JA478]. Thus, Mr. Miller could not have reasonably relied on Mr. Dunigan's comment that he would "work to" close the Bond based on the documentation he provided.[9]

Further, Atain should have known from the express terms of the Bond and the law governing appeal bonds that the Bond could not be terminated until any judgment was satisfied. [JA97]. *See* 28 N.Y. Prac., Contract Law § 11:34 ("When parties enter into a contract, they are presumed to accept all the rights and obligations imposed upon them by state and federal law.") (citing cases). Under New York law, "[a] supersedeas bond is 'required of one who petitions to set aside a judgment of execution and from which the other party may be made whole if the action is unsuccessful.'" *Cayuga Indian Nation of N.Y. v. Pataki*, 188 F. Supp. 2d 223, 250 (N.D.N.Y. 2002) (quoting *Adsani v. Miller*, 139 F.3d 67, 70 n. 2 (2d Cir. 1998)). In light of their purpose to ensure that the judgment debtor may recover if it

---

[9] Liberty further notes that Mr. Miller's reliance would be unreasonable because (a) he never sought any confirmation from Mr. Dunigan following the December 2019 email exchange and (b) he never reached out to Liberty to ascertain the status of the Bond. [JA416, JA474].

prevails on appeal, appeal bonds may not be canceled. A leading surety treatise explains that:

> [S]ureties have the right to cancel **certain** commercial bonds. Examples include most license and permit bonds, utility bonds, property broker bonds, and private service contract performance bonds. **Many bonds are not cancelable**, such as judicial, fiduciary and **appeal bonds** . . . .

Marilyn Klinger et al., *The Surety's Indemnity Agreement: Law & Practice*, 462 (2d ed. 2008) (emphasis added). [JA164].

Under New York law, a party cannot establish estoppel unless it had the right to rely on the representations alleged to create estoppel. *See Gen. Auth. for Supply Commodities, Cairo, Egypt v. Ins. Co. of N. Am.*, 951 F. Supp. 1097, 1111 (S.D.N.Y. 1997) (stating that estoppel applies only when a party relies on "a representation of fact . . . with **the right to so rely**") (emphasis added); *Donnelly v. Bank of N.Y. Co., Inc.,* 801 F. Supp. 1247, 1253 (S.D.N.Y. 1992) (same); *Gaia House Mezz LLC v. State St. Bank & Tr. Co.*, 720 F.3d 84, 90 (2d Cir. 2013) (framing the standard as whether the party invoking estoppel "rightfully relies") (applying New York law).

The documentation Mr. Miller provided to Mr. Dunigan did not show either that Atain's insured had prevailed in the underlying suit or that a judgment against Atain's insured had been satisfied—as would have been necessary for liability under the Bond to be discharged. [JA 510, JA251, JA186-197]. Atain could not have reasonably relied upon any representation that liability under the Bond had been discharged even if such had been communicated to Atain, which it was not. [JA511,

JA536-37]. Thus, Atain cannot establish that it reasonably relied on any purported

representation by Liberty as a matter of law.

### 5. Atain's equitable estoppel defense fails because it cannot establish reliance or prejudice as a matter of law.

#### i. *Atain cannot show that it relied upon or was prejudiced from having to perform an existing legal obligation.*

Atain can establish neither reliance nor prejudice from having to perform an

existing legal obligation because it cannot show that it has been placed in a worse

position than it previously occupied. Because equitable estoppel requires reliance

and prejudice, New York courts reject equitable estoppel claims when the party

invoking estoppel cannot show that it has been placed in a worse position as a result

of the opposing party's representations. *See Bank of Am., N.A. v. Ali*, 163 N.Y.S.3d

156, 163 (N.Y. App. Div. 2022) (rejecting the defendant's equitable estoppel defense

for not sufficiently alleging a "prejudicial change in his position"—"the defendant

would have had to defend himself in the 2015 action regardless of the statements

[alleged to create estoppel]"); *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*,

642 F. Supp. 2d 167, 194 (S.D.N.Y. 2009) (rejecting an equitable estoppel defense

because even though the defendant would be harmed by being prohibited from using

a particular software, such detriment arose from its lack of legal entitlement to do so

rather than reliance on the plaintiff's purported assurances and there was "no

evidence that such prohibition would put [the defendant] in a worse place than if [it]

had never used [the software]"); *Mendez v. Reynolds*, 681 N.Y.S.2d 494, 497 (N.Y. App. Div. 1998) (rejecting the plaintiffs' equitable estoppel claim because even though "their expectations were unfulfilled," they were not put in a "worse position").

An obvious application of this principle is that a party cannot establish reliance or prejudice from having been "induced" to perform an existing legal obligation because it is no worse off from doing so. In *Gaia House*, a contractor sought to estop the owner from collecting an accrued interest penalty when the owner waited months to inform the contractor that certain events of default triggering the penalty had occurred. 720 F.3d at 90. The contractor argued that it detrimentally changed its position as a result of the owner's concealment by: "(a) executing the Second and Third Modifications and (b) expending significant time and money to finish the project." *Id.* at 92. The Second Circuit, applying New York law, noted that the contractor had already agreed to undertake these tasks before the alleged misrepresentation was made and held that:

> The district court's conclusion that Gaia suffered detrimental reliance by continuing with the project fails as a matter of law. A party cannot establish justifiable reliance by alleging it was induced to perform an existing legal obligation.

*Id. See also Icebox-Scoops v. Finanz St. Honore, B.V.*, 676 F. Supp. 2d 100, 115 (E.D.N.Y. 2009) (holding that equitable estoppel can only be invoked where "one party seeks to compel another to take action that it was not already required to take

39

by the terms of a contract"); *Hutton Const. Co. v. Cnty. of Rockland*, No. 87 CIV. 4027 (LAP), 1993 WL 535012, at *9 (S.D.N.Y. Dec. 22, 1993), *aff'd,* 52 F.3d 1191 (2d Cir. 1995) ("[A] party cannot claim the benefit of estoppel when it has been induced to do only what it might otherwise have been compelled to do.") (citing *Organ v. Stewart,* 60 N.Y. 413, 420 (1875)); *Am. Prescription Plan, Inc. v. Am. Postal Workers Union*, 565 N.Y.S.2d 830, 832 (N.Y. App. Div. 1991) (rejecting equitable estoppel claim when plaintiff alleged reliance based on conduct that was consistent with its contractual obligations).

As extensively explained above, Atain had an existing legal obligation to indemnify Liberty for any loss Liberty sustained on the Bond. In its brief, Atain fails to identify any actions it would or could have taken to terminate its liability to Liberty in relation to the Bond under the circumstances, Appellant's Br. 39-40, 43, and its corporate representative admitted that he was not aware of any such remedial actions.[10] [JA416-17, JA481]. Thus, while indemnifying Liberty is certainly to Atain's detriment, such detriment results solely from Atain's preexisting legal

---

[10] Atain's fact section does misleadingly suggest that Atain could have obtained a release of the Bond from the Circuit Court. Appellant's Br. 23. The portions of the record cited by Atain show that Atain could only have secured such a release if the Claimants settled their claims against McClure and Ms. Adams. [JA395-397]. Such settlement and release would have required Atain to obtain the consent of all parties to the Circuit Court Case and fund a significant part or all of such settlement itself. Atain has not alleged or shown that it even *could* have done so, much less that it *would* have if it had correctly understood its continuing liability under the Indemnity Agreement in relation to the Bond—and Atain's successful effort via the coverage to avoid defense and indemnity obligations to the Principals indicates that it would not have.

obligation to indemnify Liberty, not any alleged misrepresentations by Liberty. Because Liberty seeks only to compel Atain to do something the Indemnity Agreement already required Atain to do, Atain cannot show that it has been placed in a worse position as a result of such representations. Thus, Atain's equitable estoppel defense fails as a matter of law.

> ### ii. Atain cannot show that it relied or was prejudiced because it did not change its position and had no right to do so.

Atain can establish neither reliance nor prejudice because it did not have the legal ability to change its liability under the Indemnity Agreement in relation to the Bond. Under New York law, "[n]o estoppel may arise in any case where the party claiming the estoppel had no right to change position." *William Penn Life Ins. Co*, 663 F. Supp. 2d at 359 (citing 57 N.Y. Jur. 2d Estoppel, Etc. § 39 [now 40]). In that case, the U.S. District Court for the Southern District of New York held:

> Because Birns had no authority to designate his wife and son as policy beneficiaries under the terms of the power of attorney—which the Birns Defendants could and should have known—the Birns Defendants had no right to change their position on the basis of William Penn's purported confirmation of his illegal and unauthorized act. Any "prejudice" the Birns Defendants suffered was actually self-imposed; it resulted from the Birns' collective failure to check the power of attorney and make sure that Birns was acting in accordance with its terms.

*Id. See also Lancaster at Fresh Meadow, Inc. v. Suderov*, 162 N.Y.S.2d 162, 166 (N.Y. Sup. Ct. 1957), *aff'd*, 174 N.Y.S.2d 882 (N.Y. App. Div. 1958) ("Nor can there be spelled out an equitable estoppel against the sellers for the reason that there was

no change of position on the part of the plaintiff and, if there was, it was a change plaintiff had, under the circumstances, no right to make.").

As previously established, Atain could not have obtained the Bond's discharge based on its express language and should have known that any purported closure of the Bond had no effect on its liability under the Indemnity Agreement for any loss paid out on the Bond. Nor did the terms of the Indemnity Agreement give Atain any right to terminate its liability under that agreement, which was not dependent on the status of the Bond. [JA74, JA394, JA92].[11] Even if Atain could have suffered prejudice, it would have been self-imposed—a result of Atain providing documentation to "close" the Bond that did not, in fact, discharge Liberty's obligations under the Bond as Atain suggested that it did. Further, Atain has not pointed to anything it could have done to discharge the Bond, only weakly suggesting that Liberty knew and should have told Atain of ways that Atain could have done so. Appellant's Br. 42-43. Therefore, Atain cannot demonstrate the reliance or prejudice necessary to establish equitable estoppel as a matter of law.

---

[11] Section 6 of the Indemnity Agreement provides that "[Liberty] shall have the right, at its option and sole discretion, to adjust, settle or compromise any claim, demand, suit or judgment upon any Bonds," and Section 5 requires Atain to reimburse any loss, cost, or expense to Liberty resulting from such decision. New York courts enforce such provisions unless the surety's "payment was made in bad faith or was unreasonable in amount." *Lee v. T.F. DeMilo Corp.*, 815 N.Y.S.2d 700, 702 (N.Y. App. Div. 2006).

**6. Contrary to Atain's characterization, New York law clearly allows courts to grant summary judgment on equitable estoppel claims or defenses when, as here, the party invoking estoppel has presented insufficient evidence to sustain such claim or defense.**

Atain argues that this Court should not affirm summary judgment on its equitable estoppel defense simply because "estoppel is **ordinarily** a question of fact for trial." *See Reeve v. Gen. Acc. Ins. Co. of N.Y.*, 658 N.Y.S.2d 143, 145 (N.Y. App. Div. 1997) (emphasis added). This statement is only a generalization from the often fact-intensive nature of the doctrine rather than a bar on pre-trial disposition of equitable estoppel claims or defenses.[12] There exists a multitude of cases in which New York courts granted or affirmed the grant of summary judgment on equitable estoppel claims or defenses, typically because under the undisputed facts, the party invoking estoppel failed to demonstrate that the doctrine applied. *See, e.g.*, *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 302 (2d Cir. 1996) ("[P]laintiffs cannot make out a claim for equitable estoppel because they cannot satisfy the first element, a false representation or concealment of material facts.") (applying New York law); *Cruz v. Ajim*, 177 N.Y.S.3d 554, 554-55 (N.Y. App. Div. 2022) (affirming summary judgment when the facts did "not support the application of equitable estoppel"); *Mason Tenders v. Abatement Int'l/Advatex Ass'n, Inc.*, 82 F. Supp. 2d 175, 179-80 (S.D.N.Y. 2000) (granting summary judgment because the party invoking equitable

---

[12] *See, e.g.*, *Amrep Corp. v. Am. Home Assur. Co.*, 440 N.Y.S.2d 244, 247 (N.Y. App. Div. 1981) (referring to this concept as a "general rule").

estoppel "has not established how its failure to be named as a party in the prior action . . . has prejudiced it, and its claim that plaintiffs should be equitably estopped from pursuing this action is not meritorious").

The foregoing cases demonstrate that summary judgment on an estoppel defense can be appropriate depending on the undisputed facts. Here, the undisputed facts demonstrate that Atain's equitable estoppel defense cannot be proven as a matter of law. Thus, the district court did not err in rejecting this defense and granting summary judgment in favor of Liberty.

### C. THE DISTRICT COURT DID NOT ERR IN DISMISSING ATAIN'S ALTERNATIVE ARGUMENT OF ESTOPPEL BY SILENCE BECAUSE THE RECORD DOES NOT PRESENT ANY GENUINE ISSUES OF MATERIAL FACT AS TO THIS ARGUMENT.

Atain's final issue on appeal is whether the district court erred in rejecting Atain's alternative argument of estoppel by silence. As an initial matter, Atain has admitted that Atain's estoppel defense was based exclusively on Atain's December 2019 email exchange and not "any other representations, misrepresentations, actions, and/or **inactions**." [JA536-537] (emphasis added). Based on this admission alone, the district court did not err in dismissing Atain's alternative argument of estoppel by silence. Even setting this aside and considering the undisputed facts, Atain failed to demonstrate the elements necessary to prove that Liberty may be estopped by silence.

Under New York law, equitable estoppel by silence may be available when the party invoking estoppel can show that the party to be estopped had a duty to speak but did not. *Gaia House*, 720 F.3d at 90 ("[A] party's silence does not give rise to a claim of equitable estoppel when the party has no duty to speak."). Atain's argument is that one party (Liberty) to an arms-length commercial transaction between two sophisticated insurance companies had a duty to speak simply because it may have been more familiar with appeal bonds than the other (Atain). *See* [JA494-95]; Appellant's Br. 44. This argument profoundly mischaracterizes the "superior knowledge" or "special facts" doctrine in New York law, which requires more than a mere informational disparity for a duty to speak to arise. The district court ruled that "[t]o the extent defendant Atain argues for estoppel by silence or inaction, it cannot establish those elements either," holding that "both plaintiff [Liberty] and defendant Atain possessed equal knowledge." [JA511]. The district court correctly held that Liberty did not have "superior knowledge" creating a duty to speak under New York law, and that Atain's estoppel by silence defense therefore failed, as demonstrated below. [13]

---

[13] The district court's ruling that the parties "possessed equal knowledge" meant that Atain could not establish the specific legal concept of "superior knowledge" under New York law, not necessarily that Atain literally had the exact same level of knowledge about appeal bonds as Liberty.

1.  **Atain cannot demonstrate that Liberty had superior knowledge giving rise to duty to disclose as necessary to prove its estoppel by silence argument.**

New York courts have held that "in limited circumstances, 'superior knowledge' can impose a duty to disclose but only in instances where a party (1) has superior knowledge, (2) that is not available to the other party by reasonable inquiry, and (3) the first party knows that the second party is acting on the basis of mistaken knowledge." *Naughright v. Weiss*, 826 F. Supp. 2d 676, 690 (S.D.N.Y. 2011) (citing *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.,* 404 F.3d 566, 582 (2d Cir. 2005)). *See also Tears v. Boston Sci. Corp.*, 344 F. Supp. 3d 500, 515 (S.D.N.Y. 2018) (same). The second element has been further elaborated as referring to the information "'peculiarly within the knowledge' of the defendant and not discoverable by the plaintiff through the 'exercise of ordinary intelligence.'" *Naughright*, 826 F. Supp. 2d at 691 (quoting *Jana L. v. West 129th Street Realty Corp.,* 802 N.Y.S.2d 132, 135 (N.Y. App. Div. 2005). Applying this standard, the Second Circuit found that because "it would not have been difficult for a sophisticated investment advisor . . . [that] had extensive access to relevant information" to "inquire further" about the matter it alleged the defendant should have disclosed, the defendants had no duty to disclose based on "superior knowledge." *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13

F.4th 247, 263-64 (2d Cir. 2021) (applying New York law). Atain cannot establish *any* of these three elements necessary to sustain its estoppel by silence defense.

Liberty could not have possessed such "superior knowledge" to Atain as created a duty to speak under New York law because Liberty had no involvement in the declaratory judgment action and its sole connection to the Circuit Court Case was its issuance of a Bond in reliance on the terms of the Indemnity Agreement. [JA571, JA97]. In contrast, Atain filed the declaratory judgment action and agreed to defend the Principals in the Circuit Court Case. [JA166-67].

Next, to the extent that Atain's argument for Liberty's "superior knowledge" rests on Atain's alleged comparative unfamiliarity with appeal bonds and the law governing them, Atain has not shown that it was unable to rectify this purported lack of familiarity by reasonable inquiry, such as by reviewing the terms of the Bond and the Indemnity Agreement to understand how liability could be discharged, consulting secondary sources, or contacting the Circuit Court that held the Bond. *See Naughright*, 826 F. Supp. 2d at 690. Such basic information about appeal bonds was certainly not peculiarly within Liberty's knowledge and was in fact discoverable by Atain through the exercise of ordinary diligence. *See Loreley Financing,* 13 F.4th at 263.

Finally, Atain does not allege that Liberty was aware that Atain was acting on mistaken knowledge: quite the opposite—Atain extensively alleges that Liberty was

47

itself under the same misapprehension about the status of the Bond as Atain. *See Naughright*, 826 F. Supp. 2d at 690; Appellant's Br. 38-40. In light of the foregoing, the facts in the record, even viewed in the light most favorable to Atain, cannot sustain estoppel by silence and the district court did not err in granting summary judgment on this argument.

**2. The district court did not improperly resolve a disputed issue of material fact by determining that Liberty did not have "superior knowledge" giving rise to a duty to speak.**

Atain claims that, in holding that Liberty did not have superior knowledge giving rise to a duty to speak, the district court "resolved a disputed issued [*sic*] of material fact—superior knowledge—relative to the applicable standard, which prevented the entry of summary judgment." Appellant's Br. 43. Atain appears to be alleging either (1) that a defense involving "superior knowledge" always presents an issue of fact not appropriate for summary judgment or (2) that Atain's "superior knowledge" defense presents an issue of fact in this particular case. The first interpretation is patently incorrect given the numerous New York cases in which summary judgment was granted on this issue,[14] and is not even supported by the cases Atain cites (several of which are unpublished). *See Sports Tech. Applications, Inc. v. MLB Advanced Media, L.P.*, 132 N.Y.S.3d 759 (N.Y. App. Div. 2020) ("**Based**

---

[14] *See, e.g., Hogan Willig, PLLC v. Kahn*, 44 N.Y.S.3d 321, 324 (N.Y. App. Div. 2016) (affirming summary judgment on superior knowledge issue); *Loreley Financing*, 13 F.4th at 263-64 (same, applying New York law); *Alliance Indus., Inc. v. Longyear Holdings, Inc.*, 854 F. Supp. 2d 321, 335 (W.D.N.Y. 2012) (granting summary judgment on superior knowledge issue).

**on the circumstances of this case**, there are disputed issues of fact as to whether the special facts doctrine applies . . . .") (emphasis added); *P.T. Bank Cent. Asia v. ABN AMRO Bank N.V.*, 754 N.Y.S.2d 245, 252 (N.Y. App. Div. 2003) ("[I]t is inappropriate to determine those issues as a matter of law based solely on the allegations in plaintiff's complaint, at this point in the proceedings [*i.e.*, the motion to dismiss stage]").

As to the second interpretation, the previous section clearly demonstrates that Liberty did not have "superior knowledge" as a matter of law. Thus, the district court did not improperly resolve a disputed issue of material fact as to the "superior knowledge" issue.

### 3. Atain's estoppel by silence argument fails because Atain did not rely upon Liberty's purported silence.

Assuming *arguendo* that Liberty did have a duty to speak, Atain has not shown that Liberty failed to do so, or that Atain relied upon Liberty's silence. Atain has taken great pains to establish that Liberty typically did not communicate directly with entities for whom it issued surety bonds but communicated indirectly via agents or brokers. Appellant's Br. 14, 22, 38. Atain has sought to estop Liberty based on an email to Mr. Dunigan, an agent/broker with respect to the Bond. Given that Liberty sent an email to Mr. Dunigan pursuant to its longstanding and accepted practice of communicating with the agents or brokers of entities to whom it issued surety bonds

49

rather than such entities themselves, Liberty did not fail to speak. [JA326]. Any failure of communication would have been on the part of Mr. Dunigan.

Further, because the record shows Liberty never communicated with Atain directly, Atain had no expectation that Liberty would do so in this instance and therefore could not have relied upon Liberty's silence. [JA492, JA288, JA232]. The record also makes clear that to the extent that Atain relied upon any person's silence, it was Mr. Dunigan's silence, not Liberty's silence. [JA171, JA552]. Because Atain did not rely, and could not have relied upon, Liberty's silence under the circumstances, the record does not support Atain's estoppel by silence defense and the district court properly granted summary judgment as to it.

### 4. Atain's estoppel by silence argument also fails because Atain cannot establish all of the necessary elements.

Under New York law, the elements of equitable estoppel by silence are the same as an equitable estoppel claim except that instead of an affirmative misrepresentation, the party invoking estoppel must show that the party to be estopped had a duty to speak but did not. *Gaia House*, 720 F.3d at 90. Thus, the party invoking estoppel by silence must also establish reasonable reliance and prejudice to sustain its equitable estoppel claim. *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001) (applying New York law). The reasons stated in Sections B.2-6, *supra*, therefore apply equally to Atain's alternative argument for

estoppel by silence and further demonstrate that Atain fails to establish equitable estoppel under this argument.

## CONCLUSION

For the foregoing reasons, Liberty submits that the district court properly granted summary judgment against Atain on its equitable estoppel claim as a matter of law and that it did not impermissibly resolve any disputed issues of material fact. This Court should therefore affirm the ruling of the district court.

## REQUEST FOR ORAL ARGUMENT

Liberty hereby requests oral argument because it believes that the decisional process would be significantly aided by oral argument. However, Liberty objects to Atain's characterization that the district court applied a novel standard, creating an issue of first impression. As discussed at length above, the district court properly applied the existing test for equitable estoppel. Therefore, no issue of first impression is at issue in this case.

Respectfully submitted,

*/s/ Melissa Jane Lee*

MELISSA JANE LEE
TN BPR No. 029228
MANIER & HEROD, P.C.
1201 Demonbreun Street, Suite 900
Nashville, Tennessee 37203
(615) 742-9372
mlee@manierherod.com
*Counsel for Plaintiff-Appellee*

51

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. __23-1013__      **Caption:** _Liberty Mutual Ins. Co. v. Atain Specialty Ins. Co.___

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains ___12,977___ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using Microsoft Word _____ [*identify word processing program*] in Times New Roman 14 pt _____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) _Melissa Lee_____

Party Name _Liberty Mutual Insurance Company___

Dated: _5/10/23_____